**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAYMOND ROUSE, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 05-CV-05157 (JAG) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| PAULIILO and SILVA, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    RAYMOND ROUSE, pro se
    #427741
    EJSP-ASCU
    Rahway, New Jersey 07065

**GREENAWAY, JR., District Judge**

    Plaintiff Raymond Rouse (hereinafter "Plaintiff")[1] currently confined at the East Jersey State Prison, Rahway, New Jersey, brought this 42 U.S.C. § 1983 action in forma pauperis without

---

[1] Plaintiff is an African-American male. On December 21, 2001, Plaintiff was sentenced for manslaughter and robbery; his maximum term to be served is eight years. It appears that Plaintiff began serving his sentence in the Central Reception and Assignment Facility (hereinafter "CRAF"). At a certain point in time unknown to this Court, Plaintiff was transferred to the East Jersey State Prison. See New Jersey Dep't of Corrections, Inmate Locator, at <<https://www6.state.nj.us/DOC_Inmate/details?x=1012578&n=0>> (visited on March 10, 2006).

prepayment of fees, pursuant to 28 U.S.C. § 1915.  On January 17, 2006, this Court issued an Order (hereinafter "January Order") in which, based on Plaintiff's affidavit of indigence and institutional account statement, the Court granted Plaintiff the <u>in forma pauperis</u> status, pursuant to 28 U.S.C. § 1915(a) (1998), and ordered the Clerk of the Court to file the complaint.

In addition, the January Order: (1) dismissed Plaintiff's claims with respect to his sentencing term, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and stated, in no ambiguous terms, that the dismissal was non-prejudicial solely for the purposes of or related to Plaintiff's right to seek a Writ of Habeas Corpus; and (2) directed Plaintiff to file an amended complaint which would state facts with respect to Plaintiff's claim that Plaintiff's health and/or life are in danger at the place of Plaintiff's current confinement.[2]  <u>See</u> <u>Rouse v. Pauliilo and Silva</u>, 2006 U.S. Dist. LEXIS 2738 (D.N.J. Jan. 24, 2006).

---

[2] Plaintiff's original complaint (1) requested Plaintiff's transfer to a correctional facility of Plaintiff's choice, that is, the CRAF, and (2)  asserted that Plaintiff's life was in danger because various law enforcement and/or correctional officers have been conspiring to kill Plaintiff by having "a contract out on [Plaintiff's] life."  <u>See</u> <u>Rouse v. Pauliilo and Silva</u>, 2006 U.S. Dist. LEXIS 2738 (D.N.J. Jan. 24, 2006).  The Court issued an Opinion accompanying the January Order explaining that, while Plaintiff had no constitutional right to being placed at a correctional facility of Plaintiff's choice, Plaintiff indeed had the right to be confined in a facility where Plaintiff's life is not in danger.  <u>See</u> <u>id</u>.

Plaintiff responded to the January Order by sending two sets of correspondence received by this Court on January 27, 2006 (Docket No. 6, hereinafter "January Letter) and on February 24, 2006 (Docket No. 7, hereinafter "February Letter").[3]

The January Letter consisted of: (1) a three-page letter challenging the calculation of Plaintiff's sentencing term; (2) nine pages of various exhibits reflecting Plaintiff's applications to various entities with regard to Plaintiff's sentence being improperly calculated, as well as responses of these entities explaining why the calculation of Plaintiff's sentencing term was correct; and (3) a two-page letter (hereinafter "Item [3]") (a) requesting Plaintiff's transfer to the CRAF, (b) requesting that Plaintiff would be placed in protective custody, and (c) restating Plaintiff's assertion that various officers have been conspiring for years to kill Plaintiff by having "a contract out on [Plaintiff's] life."[4]  See January Letter.

---

[3] The January and February Letters consisted of more than one letter.

[4] Item [3] is similar to Plaintiff's other submissions; it presents a cumbersome listing of events in a convoluted fashion. More importantly, Plaintiff's terminology inhibits comprehension of his claim. However, it appears that Plaintiff asserts the following: In 1993, 1994 or 1997, Plaintiff, acting under circumstances and through the means unspecified in the Item [3], caused either termination or suspension of employment of an unnamed African-American officer (who was either in law enforcement or a correctional officer, hereinafter "Suspended Officer") on the grounds of drug-related offence(s).  These drugs, worth $50,000,

The February Letter consisted of: (1) a one-page letter alleging a complex scheme by which African-American officers at the Plaintiff's correctional facility were trying to "frame" a Caucasian officer for mishandling of Plaintiff's mail, which these African-American officers allegedly mishandled in order to obstruct Plaintiff's access to court; (2) a two-page letter informing this Court about Plaintiff's future plans to demand from the Parole Board and the Office of Attorney General that Plaintiff would be placed at a certain locale upon Plaintiff's release on parole, and detailing Plaintiff's beliefs why Plaintiff might be killed if

---

were located at the residence of the Suspended Officer's family member identified by Plaintiff as "Officer Derrick" without last name (hereinafter "Derrick Doe"), who was also African-American officer employed either in law enforcement or as a correctional officer.  The Suspended Officer and Derrick Doe avowed to revenge Plaintiff and got "a contract out on [Plaintiff's] life."  In fostering their plan to kill Plaintiff, the Suspended Officer and Derrick Doe conspired with correctional officers Parker (no first name provided), Mark Walker, Williams (no first name provided), Romel Alexander and Gregory Page, all of whom were of African-American descent and employed either at the Plaintiff's current place of confinement or other New Jersey correctional facilities (hereinafter collectively "Conspiring Officers"). In sum, the Item [3] states that: (1) only African-American correctional/law enforcement officers are involved in the conspiracy to kill Plaintiff; (2) Plaintiff "fear[s] for [his] safety, [Plaintiff is] having problems with an [unnamed] officer" at his current place of confinement since this officer is acting in furtherance of the scheme to kill Plaintiff; and (3) Plaintiff needs to be returned back to the CRAF and placed in protective custody.  See January Letter at 1-2.  The Item [3] also indicated that Plaintiff: (1) shared his concerns with James F. Barbo and Debbe Faunce (tile/positions of both unspecified, hereinafter "Investigating Officers"); (2) have not had  any response from the Investigating Officers.  See id.

placed otherwise;[5] (3) seven pages of attachments, some of which reflected Plaintiff's financial transactions, while others duplicated the exhibits provided in the January Letter; (4) a one-page letter identifying two "on the street" witnesses who might support Plaintiff's contention that, unless Plaintiff is confined at the CRAF, Plaintiff's life would be in danger; and (5) a two-page letter restating why Plaintiff's sentencing term was incorrectly calculated. See February Letter.

Although this Court has not received any indication from Plaintiff one way or the other as to which of these submissions Plaintiff wishes this Court to consider as Plaintiff's amended complaint, the Court surmises that both the January Letter and the February Letter, read jointly, constitute Plaintiff's amended complaint (hereinafter "Amended Complaint") for the purposes of Plaintiff's compliance with this Court's January Order. As such, this Court shall examine the Amended Complaint for potential dismissal, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A (1998). For the reasons set forth below, this Court concludes that the

---

[5] According to Plaintiff, since female African-American correctional officers occasionally get engaged in relationships with African-American inmates who, in turn, keep the emotional ties ensuing from these relationships after their release from confinement, Plaintiff's life would be in danger because these released inmates will further the conspiracy to kill Plaintiff, apparently acting on request of the African-American female correction officers who, in turn, will act as agents for the African-American Conspiring Officers defined in footnote 3, supra.

Amended Complaint should be partially dismissed for failure to state claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## DISCUSSION

**A.   Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that

can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Liberally construing the statements made in Plaintiff's Amended Complaint, see Haines, 404 U.S. at 520, the Court presumes that Plaintiff alleges the following: (1) Plaintiff's constitutional rights were violated by incorrect calculation of his sentencing term; (2) Plaintiff's constitutional rights might be violated if he is released into the area where his health and/or life would be in danger; and (3) Plaintiff's constitutional rights are violated since he is incarcerated in the correctional facility where actions of a certain officer manifest imminent danger to Plaintiff's health and/or life. Neither claim (1) nor claim (2) listed above is a viable contention under § 1983.

**B.  Claims Not Viable Under § 1983**

Plaintiff's assertion that his sentencing term is calculated incorrectly is not viable pursuant to 42 U.S.C. § 1983.  In this Court's January Opinion and Order, it is plainly stated that Plaintiff's remedy for erroneous calculation of his sentencing term lay in bringing a Habeas Corpus action.  See Rouse, 2006 U.S. Dist. LEXIS 2738 at *11, n. 2 (citing Preiser v. Rodriguez, 512 U.S. 477 (1994); Heck v. Humphrey, 411 U.S. 475 (1973)).  Plaintiff's reiteration of this claim cannot resuscitate this allegation.  See id.  Moreover, since Plaintiff's allegations against the two named Defendants, Pauliilo and Silva, are limited solely to the erroneous calculation issue, this Court shall dismiss Plaintiff's claim against these Defendants.  See Bohm v. Hackel, 1987 U.S. Dist. LEXIS 15792 at *2 (E.D. Mich. 1987) (court must dismiss when § 1983 allegation fails to aver a constitutional deprivation).

Plaintiff's contention that his health and/or life might be in danger if Plaintiff is released on parole in a certain geographic location is not viable.  At present, Plaintiff has not suffered an injury.  Any claim not articulated in present terms is unripe since it fails to make factual assertions and, thus, is highly speculative.  See Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999) (spelling out that a 42 U.S.C. § 1983 claim by a prisoner about his post-release condition cannot be deemed ripe for adjudication where the prisoner was not yet released and, thus, not

yet suffered any injury).

**C.   Viable Claim Under § 1983**

Plaintiff's claim that his constitutional rights have been, and will continue to be, violated because actions of certain officers manifests an imminent threat to Plaintiff's health and/or life is cognizable. Plaintiff has a protected right in being incarcerated at a place of confinement not endangering his safety, in accordance with the standards set forth by the Eighth Amendment.[6]

**1.   Wrongful Acts Must Be Executed Under Color of Law**

Section 1983 authorizes a person to seek redress for a violation of his federal civil rights by a person who was acting

---

[6]

The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," [Helling v. McKinney, 509 U.S. 25, 31 (1993)]. In its prohibition of "cruel and unusual punishments," the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-527 (1984) [see] Helling, supra, at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); [Estelle, 429 U.S. at 103;] Cf. DeShaney v. Winnebago County Dept. of Social Servs., 489 U.S. 189, 198-199 (1989).

Farmer v. Brennan, 511 U.S. 825, 834 (1994).

under color of state law.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to establish a violation of 42 U.S.C. § 1983, Plaintiff will have to demonstrate: (1) that he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the challenged conduct was committed by person(s) acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.J. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

**2. Failure to Protect Inquiry**

Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)).  To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show that he is objectively "incarcerated under conditions posing a substantial risk of serious harm" and that the Defendant knows of and disregards that risk.  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." Id. Therefore, in order to prevail on his 42 U.S.C. § 1983 claim asserting that his constitutional rights are/were violated because of the actions of certain officers, an imminent threat to Plaintiff's health and/or life must arise. Specifically, Plaintiff must show that: (1) he is currently "incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the Conspiring Officers expressly intended to cause Plaintiff harm and/or the Investigating Officers knew and disregarded the risk of harm to Plaintiff.[7] See Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1985).

### CONCLUSION

For the reasons set forth above, Plaintiff's claim with respect to the calculation of his sentencing term is DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. **This**

---

[7] The caption in this matter should be amended accordingly to include the names of the alleged Conspiring and Investigating Officers, as Defendants in this action. The fact that Plaintiff does not know the (full) names and/or titles of these officers neither nullifies nor reduces Plaintiff's claim. See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("Plaintiffs may be unaware of the identities and roles of relevant actors and, owing to their incarceration or institutionalization, unable to conduct a pre-trial investigation to fill in the gaps. But by itself, this lack of knowledge does not bar entry into a federal court. . . . [P]leading and the liberal discovery rules allow for meritorious claims to proceed even if a confined prisoner cannot adduce all the necessary facts at the outset.")

**dismissal is non-prejudicial solely for the purposes of or related to Plaintiff's right to seek a Writ of Habeas Corpus**.

Plaintiff's claim that his health and/or life might be in danger when, and if, Plaintiff is released on parole in a certain geographic location is DISMISSED without prejudice as unripe.

Plaintiff's claim that his health and/or life are currently in danger may proceed.  See Alston, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

An appropriate Order accompanies this Opinion.


                                    S/Joseph A. Greenaway, Jr.
                                    JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: April 5, 2006
Newark, New Jersey